UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


| | | |
|---|---|---|
| PAUL BRAUNSTEIN, dba BASEPLANS USA, | ) ) ) | |
| Plaintiff, | ) ) | 2:06-cv-02726-PHX-JWS |
| vs. | ) ) | ORDER AND OPINION |
| THE STATE OF ARIZONA, THE ARIZONA DEPARTMENT OF TRANSPORTATION, VICTOR MENDEZ, LISA WORMINGTON, AND SUSAN TELLEZ | ) ) ) ) ) ) ) | [Re: Motions at Dockets 121 and 122] |
| Defendants. | ) ) | |

## I. MOTIONS PRESENTED

At docket 121, defendant Victor Mendez ("Mendez") moved for an award of attorney's fees. The motion was supplemented at docket 123 and supported by a memorandum and affidavit at docket 128. At docket 122, defendants State of Arizona, Arizona Department of Transportation, Susan Tellez, and Leis Wormington (collectively "State Defendants") moved for an award of attorney's fees. That motion was supported by a memorandum at docket 124, an affidavit at docket 125, and additional exhibits filed at docket 127. Plaintiff Paul Braunstein ("Braunstein") file a combined opposition to Mendez's motion and the State Defendants' motion at docket 141. The State Defendants replied at docket 142, and Mendez filed his reply at docket 143.

The motions are now ripe for decision. Oral argument would not assist the court.

## II.  BACKGROUND

In his First Amended Complaint, Braunstein alleged that the State of Arizona and its Department of Transportation ("ADOT") "implemented and enforced the requirement that a specified percentage of Contract No. 05-26 be awarded to female and minority owned businesses."[1]  Believing that the disadvantaged business entity ("DBE") program he associated with the letting of Contract No. 05-26 violated the United States Constitution, Braunstein sued the individual defendants, Mendez, Wormington, and Tellez alleging that they "approved, authorized and enforced the use of race, national origin and gender based preferences in contracts awarded by the State of Arizona and ADOT."[2]

In the first claim for relief, Braunstein asked the court to declare any regulations, policies, and practices relating to race, national origin, and gender preferences in ADOT contracts and subcontracts to be unconstitutional.[3]  In his second claim, Braunstein asked for an award of damages based on the unconstitutional actions by defendants pursuant to 42 U.S.C. §§ 1981, 1983, and 2000(d).[4]  Finally, in a third claim for relief, Braunstein asked the court to enjoin the actions of all the defendants.[5]  Braunstein alleged that there was jurisdiction under 28 U.S.C. §§ 1331 and 1343.[6]

The claims arose out of and revolved around one particular state construction contract, Contract No. 05-26.  In earlier motion practice Braunstein explained: "It is Defendants' violation of BasePlans' right to equal protection of law under the Fourth

---

[1] Doc. 13 at ¶ 15.

[2] *Id*. at ¶ 18.

[3] *Id*. at ¶¶ 21-24.

[4] *Id*. at ¶¶ 25-27.

[5] *Id*. at ¶¶ 28 and 29.

[6] *Id*. at ¶ 8.

and Fourteenth Amendment of the Constitution of the United States relative to this new contract [Contract No. 05-26] which are the claims at issue in the present case . . . ."[7]

Contract No. 05-26 was an on-going contract. It was originally let based on a solicitation in November of 2004 seeking the provision of services relating to a regional transportation plan with an expected funded duration of 20 years. However, the contract was awarded for only one year with the contemplation of successive annual renewals.[8] Subcontracts to perform actual road construction and maintenance are awarded under the auspices of Contract No. 05-26. It must have been clear to Braunstein when he filed the instant litigation that he lacked standing to pursue a claim that he was denied the opportunity to bid on the overall Contract No. 05-26 as a result of discrimination actionable under federal law, because he had previously alleged in a state court lawsuit that the reason he could not bid on the contract was the fact that his company was simply too small.[9] Braunstein also knew at the time he filed his complaint in the case at bar that those who would bid on Contract No. 05-26 would have hired him as a subcontractor, but it was not clear whether the reason for doing so had something to do with the fact that he did not qualify as a DBE.[10]

In an earlier motion all defendants sought to have Braunstein's claims dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) advancing several arguments. In one of significance here they argued Braunstein lacked standing. In its order of September 5, 2007, the court denied the request to dismiss for lack of standing, but noted:

> Defendants' factual attack on plaintiff's standing is insufficient to permit this court to conclude that Braunstein lacks standing. This is not to say

---

[7]Doc. 19 at 12.

[8]Doc. 19, attachment to Sworn Statement of Paul Braunstein bearing Bates stamp numbers 039 and 042.

[9]First Amended Special Action Complaint filed by Braunstein in Maricopa County Superior Court, in Case No. CV 2005-091963 at ¶¶ 64 and 65, copy found at doc. 15-3 as an exhibit to defendants' motion to dismiss at doc. 15.

[10]*Id*. at ¶ 67. The reason or reasons the large firms would not subcontract with Braunstein was not disclosed.

that after appropriate discovery a motion for summary judgment would not succeed.[11]

In its order, the court then turned to another matter of significance to the pending motions, the Eleventh Amendment immunity of the defendants. In its September 5, 2007, order the court explained:

> Absent Congressional abrogation of its immunity, a state invoking its Eleventh Amendment rights is immune from suit in federal court for any type of relief. Thus, the Eleventh Amendment forecloses all of plaintiff's claims against the State of Arizona to the extent they are based on 42 U.S.C. §§ 1981 and 1983. However, Congress has abolished state immunity from suit in federal court on claims brought pursuant to 42 U.S.C. § 2000d. Defendants would avoid abrogation of Eleventh Amendment immunity on the grounds that the federal funding which is a prerequisite for the abrogation is not involved in Contract 05-26. The parties offer conflicting evidence, and the court is unable to determine whether or not federal funds are involved. It follows that while plaintiff's claims against the state based on 42 U.S.C. § 1981 and 1983 must be dismissed for lack of subject matter jurisdiction, disputed issues of material fact preclude dismissal of plaintiff's claims based on § 2000d.
>
> The outcome is the same with respect to plaintiff's claims against ADOT. Plaintiff has alleged that it is an administrative agency of the State of Arizona, and there appears to be no dispute that it is "an arm of the state." If follows that the Eleventh Amendment applies in the same fashion to plaintiffs' claims against ADOT. Plaintiff's claims against ADOT based on §§ 1981 and 1983 must be dismissed, but his claims based on § 2000d remain, because there may be federal money involved in the challenged State activity.
>
> Similarly, the three individual defendants cannot be liable in their official capacity for damages. "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. Under the doctrine of *Ex Parte Young*, this court does have jurisdiction over claims against the individuals in their official capacities for injunctive relief. In summary then, the claim for injunctive relief against the individuals acting in their official

---

[11]Doc. 24 at pp. 10-11.

capacities may proceed under §§ 9812, 1983, and 2000d, but the damage claim may proceed only under § 2000d.[12]

Following the close of discovery and more motion practice, the court granted a motion to dismiss the claims for injunctive relief and deferred ruling on the § 2000d damage claim to allow Braunstein to show cause why the damage claim should not be dismissed for lack of standing.[13] His effort to show that he had standing failed, and the court dismissed the damage claim in an order which explained the dismissal as follows:

> In an order at docket 114, the court addressed the parties' cross-motions for summary judgment ruling on some of the issues raised and alerting the parties to the court's concern that plaintiff might lack standing as to issues not already resolved by the court. After reviewing the briefs submitted in response to the order at docket 114, the court concludes that plaintiff Braunstein lacks standing to pursue his claim for damages against the defendants.
>
> As the Supreme Court has noted:
>
>> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. *The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.*
>
> *Northeastern Florida Ch. of Assoc. Gen. Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656, 666 (1993) (emphasis added). Thus, the question is whether the DBE program was a barrier to Braunstein's bidding on the utility subcontracting work.
>
> Braunstein contends the bid process for Contract 05-26 was tainted by the DBE program, but fails to show how he was impacted by ADOT's 6% DBE participation goal. As explained in the order at docket 114 the affirmative action and DBE requirements were largely aspirational in nature.

---

[12]Doc. 24 at p. 12-13 (citations and footnotes omitted).

[13]Order at doc. 114.

Braunstein was afforded the opportunity to bid on subcontracting work, and the DBE goal did not serve as a barrier to doing so, nor was it an impediment to his securing a subcontract. Rather, Braunstein's inability to secure utility subcontracting work in connection with Contract 05-26 stemmed from earlier events unrelated to his status as a non-DBE subcontractor, notably his past performance for DMJM + Harris. Braunstein's claims not being redressable, he lacks standing.

### III. DISCUSSION

Mendez largely relies on the briefing filed by the State Defendants,[14] so the ensuing discussion focuses primarily on the briefing filed by the State Defendants and Braunstein. All defendants request an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, and Fed. R. Civ. P. 11.

#### A. 42 U.S.C. § 1988

Mendez and the State Defendants were the prevailing parties in this case. The Ninth Circuit has instructed that an award of attorneys' fees may be made to a prevailing defendant pursuant to 42 U.S.C. § 1988, "only where the action is found to be 'unreasonable, frivolous, meritless, or vexatious.'"[15] In the seminal decision on the topic, the Supreme Court put it this way:

> [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith,* there will be an even stronger basis for charging him with the attorney's fees incurred by the defense."[16]

To have standing to pursue any of his claims for damages, Braunstein needed to show that the actions of one or more of the defendants caused him harm. At an early stage of the proceeding, this court concluded that it was possible that Braunstein might

---

[14]Doc. 128. Mendez also indicated that he would file a separate request for attorney's fees pursuant to A.R.S. § 12-341.01. *Id*. at p. 2. He has not. Accordingly, the court finds it unnecessary to consider that possible basis for an award to Mendez.

[15]*Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994) (quoting *Roberts v. Spalding*, 783 F.2d 867, 874 (9th Cir. 1986).

[16]*Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978)

be able to do that. However, following discovery it became apparent that the reason Braunstein did not get any of the utility subcontract work from the successful bidder on Contract No. 05-26 had nothing to do with the fact that he did not qualify for DBE status. Rather, he did not get any of the work because those who were in a position to provide it did not want to do business with Braunstein.[17] Nevertheless, Braunstein and his lawyer persisted in pursuing claims long after it became clear they lacked merit.[18]

There is another reason why Braunstein's continued pursuit of a damage claim was improper. Following dismissal of his other claims for damages, the remaining damage claim was predicated on a violation of 42 U.S.C. § 2000d. That statute prohibits discrimination "under any program or activity receiving Federal financial assistance."[19] The defendants convincingly demonstrated to Braunstein's lawyer that there were no federal funds in any way associated with Contract 05-26.[20] Allowing a very reasonable period of time for Braunstein and his lawyer to investigate the accuracy of the persuasive information provided by defense counsel, they should have realized no later than March of 2008 that there was no basis for a damage claim under § 2000d.

Braunstein's pursuit of claims barred by the Eleventh Amendment was frivolous from the outset. The fact that a claim for damages could not be pursued against a state or state actors pursuant to 42 U.S.C. §§ 1981 and 1983 has been well established for many years.[21] Furthermore, Braunstein's attorney had been directly advised of this fact

---

[17]Order at docket 114.

[18]*See* discussion at docket 124 pp. 15-16 which is not rebutted by Braunstein in his response at docket 141.

[19]42 U.S.C. § 2000d.

[20]Letter of October 17, 2007, from defense counsel to Braunstein's counsel. Exhibit 1 to doc. 127 at p. 4 of 54.

[21]*E.g.*, *Peters v. Lieuallen*, 693 F.2d 966, 970 (9th Cir. 1982) ("There is no doubt that suit under either §§ 1981 and 1983 against the State Board of Higher Education is a suit against the state *qua* state and is, therefore, barred by the Eleventh Amendment.")

by a district judge only months before Braunstein filed the instant lawsuit.[22]  The point was made again in correspondence from defense counsel dated October 17, 2007.[23]  Finally, by the end of the first quarter of 2008, Braunstein and his lawyer should have realized that he lacked standing to pursue a damage claim under § 2000d.

For the reasons above, both Mendez and the State Defendants are entitled to an award of attorneys' fees from Braunstein pursuant to 42 U.S.C. §1988 as prevailing defendants.  Responsibility for an award under § 1988 would rest on Braunstein alone.

### B.  28 U.S.C. § 1927

Federal law allows a litigant to recover "excess costs, expenses, and attorneys' fees reasonably incurred" from an attorney who unreasonably or vexatiously expands the proceedings.[24]  This statute is applicable in civil rights litigation and is to be construed independently of the provision in § 1988 allowing an award of costs and fees to a prevailing litigant.[25]  By its terms, § 1927 authorizes an award of only those costs, expenses, and fees which flow from the act of expanding the proceedings.  Here, the inclusion of the claims barred by the Eleventh Amendment was obviously an expansion of the proceedings which was entirely unwarranted and for which Braunstein's lawyers, Messrs. Lofland and Gerding, are properly held responsible.  In addition, Lofland and Gerding should have known from approximately April 1, 2008, onward that continued pursuit of a damage claim in reliance on § 2000d was groundless.  All defendants are entitled to a recovery of excess cost and fees from Lofland and Gerding pursuant to 28 U.S.C. § 1927.

---

[22]The facts and circumstances supporting this statement are discussed at some length in the State Defendants memo at pp. 11-12 of docket 124 and are readily verifiable by reference to litigation in the Western District of Washington.  *See* Case No. 3:00-cv-5204, *Western States Paving Co. v. Washington State Dept. of Transportation, et al*.

[23]Exhibit 1 to doc. 127.

[24]28 U.S.C. § 1927.

[25]*Roadway Express, Inc. v. Piper, et al.*, 447 U.S. 752, 761 (1980).

### C. Federal Rule of Civil Procedure 11

The defendants also rely on Rule 11 of the Federal Rules of Civil Procedure as an alternative basis for an award of costs and fees. Rule 11 provides for the imposition of sanctions on lawyers who violate the rule. The sanctions may include payment of all or part of the attorneys' fees and costs caused by the violation.[26] However, Rule 11 contains limitations, both substantive and procedural, which must be respected. Here, none of the defendants have established compliance with Rule 11(c)(2). There will be no award made pursuant to Rule 11.

### D. Arizona Local Civil Rule 54.2

Braunstein argues that Mendez and the State Defendants failed to comply with the local rule applicable to the award of attorneys' fees, LRCiv 54.2, because neither attached the statement of consultation required by LRCiv 54.2(d)(1). The rule applies to awards sought pursuant to § 1988, because they are in the nature of costs, not damages. LRCiv 54.2 is inapplicable to motions asking for an award pursuant to 28 U.S.C. § 1927.[27] The Rule provides that the statement of consultation is to be "attached to the supporting memorandum."[28] Where consultation has been attempted but has not taken place, moving counsel must demonstrate that a good faith effort to confer was made and explain why the conference did not take place.[29]

There is a statement of consultation in the form of the affidavit of Michelle Swann, which was attached to the reply memorandum filed by the State Defendants.[30] There is an equivalent statement contained in the affidavit of Kiersten Murphy attached to Mendez's reply memorandum.[31] Had these affidavits been attached to the supporting

---

[26] Fed. R. Civ. P. 11(c)(4).

[27] LRCiv 54.2(a)

[28] LRCiv 54.2((d)(1).

[29] *Id.*

[30] Doc. 142-1.

[31] Doc. 143-1.

memorandum, there would be no question about compliance with the consultation requirement. The statements of consultation filed with the reply memoranda were filed within 60 days from the entry of judgment, which is the deadline for filing the supporting memorandum and associated supporting documentation.[32] It is also true that much of the State Defendants' supporting memorandum (in which Mendez joined) discusses futile attempts made during the course of the litigation to obtain Braunstein's cooperation. In sum, there was substantial compliance with the local rule, although the sequence of filing documents was not technically correct. In reaching this conclusion, the court follows the lead of Judge Broomfield who held under very similar circumstances that the moving party had adequately complied with LRCiv 54.2 by filing the statement of consultation with the reply memo.[33]

### E. Awards Made

#### 1. Section 1988–State Defendants

Section 1988(b) of Title 42 authorizes the court to make an award of attorneys' fees, and § 1988(c) authorizes the court to make an award of expert's fees in cases such as this one wherein a claim has been made pursuant to § 1981. The State Defendants seek an award of $107,052.24 consisting of $101,543.40 in attorneys' fees, $2,780.68 in expert's fees, $2,242.43 in Westlaw charges, and $485.73 in other non-taxable costs.[34] Braunstein has not argued that the amounts are unreasonable.

The rates used in calculating the attorneys' fees are the rates established by defense counsel's contract with the State. The rates are reasonable–actually significantly lower than the rates this court typically sees for partners and associates in

---

[32] LRCiv 54.2(b)(1)(B) and (2). The judgment in this case was entered on June 16, 2010, and the two statements of consultation were filed on August 16, 2010, 59 days later.

[33] *Schrum v. Burlington Northern Santa Fe Ry. Co.*, 2008 WL 2278137 (D. Ariz. 2008). This decision, which holds substantial though technically deficient compliance with LRCiv 54.2 to be sufficient, is generally consistent with the other decisions from this district cited by the State Defendants at pp. 3-4 of their reply memo at doc. 142.

[34] Doc. 125 at p. 5.

Arizona litigation.[35] The number of hours appears to be reasonable. An award of $101,531.50 for attorneys' fees is reasonable. This amount is $11.90 less than the amount requested, because the sum of the bill for work through May 31, 2010, and the draft bill for work thereafter totals $101,531.50 ($97,077.00 + $4,454.50).

Section 1988 does not explicitly authorize the court to make an award of non-taxable costs, and the State Defendants have not cited a case interpreting § 1988(b) or § 1988(c) to include non-taxable costs.[36] The court therefore declines to award the sum of $485.73 consisting of express delivery charges and postage. The court reaches the same conclusion with respect to the $2,242.43 in Westlaw charges.

The request for an award of $2,780.68 for expert's fees, if adequately supported, could be made pursuant to § 1988(c). The request is not adequately supported. The invoice submitted shows charges for "outside" consultants which are much higher than the sum sought. There is nothing to explain which particular charges for assistance from an outside consultant comprise the $2,780.68 sought. The bare assertion in the State Defendants' briefing[37] that this amount was the cost of producing an expert report to contradict Braunstein's claims is insufficient.

In summary, an award of attorneys' fees in the amount of $101,531.50 will be made against Braunstein and in favor of the State of Arizona pursuant to § 1988(b).

### 2. Section 1988–Mendez

In his memorandum at docket 128, Mendez seeks to recover the sum of $53,490.50 in attorneys' fees and $1,093.23 for electronic research charges. The court will decline the request to make an award for electronic research charges because, like the State Defendants, Mendez provides no case law which would authorize the

---

[35]The assigned judge is a visiting judge, but one who has presided over hundreds of Arizona civil cases.

[36]Perhaps there is case law which would support awarding non-taxable costs, but it is incumbent on the party seeking the award to provide adequate support. It is not the court's task to search it out.

[37]Doc. 124 at p. 17.

recovery of such non-taxable costs pursuant to § 1988.  The court next turns to the matter of Mendez's attorneys' fees.

Mendez was originally represented by the Curtis, Goodwin law firm, the lawyers representing the State Defendants.  On June 18, 2010, Mendez made an application to substitute the Gallagher & Kennedy firm because he had left his position with ADOT, and the court approved the application.  In opposing Mendez's motion for attorneys' fees, Braunstein has not objected to the proposition that Mendez required separate counsel.  The rates charged by the Gallagher & Kennedy firm are substantially higher than the rates charged by the Curtis, Goodwin firm, but they are the rates set by Gallagher's contract with the state.  The rates are consistent with rates charged for similar work by lawyers in the Phoenix area.[38]  The number of hours charged appears to be reasonable.  Braunstein has not contended that either the rates or the number of hours charged is excessive.  An award of $53,490.50 will therefore be made pursuant to § 1988(b) to the State of Arizona which is responsible for Mendez's defense costs.

### 3.  Section 1927

The court has found that Braunstein's lawyers, Gary Lofland and Paul Gerding, unnecessarily multiplied the proceedings in this case.  It is therefore appropriate that they be required to personally pay the "excess costs, expenses and attorneys' fees which resulted from their actions.  Braunstein's lawyers' most obvious actions in prolonging the proceedings was the pursuit of the §§ 1981 and 1983 damage claims and their persistence in pursuing the § 2000d damage claim long after it should have been clear that no federal funds were involved.  They also acted in other ways which the court considers unreasonable, but which are harder to separate from Braunstein's personal insistence on pursing meritless claims.  After examining the entire record, the court concludes that of an award of $30,000 in attorneys' fees against the lawyers is warranted for their pursuit of the frivolous §§ 1981 and 1983 damage claims and unwarranted persistence in the § 2000d damage claim.  Of course, none of the defendants is entitled to a double recovery, so (unless it proves impossible to collect

---

[38] *See* n.35.

from Lofland and Gerding), collection of the award against Braunstein will be reduced by any portion of the $30,000 collected from his lawyers.

Section 1927, unlike § 1988, by its terms provides for an award of excess costs. The court will therefore add the $1,093.23 in legal research fees incurred by the Gallagher firm to the award of attorneys' fees. The court will also augment the award to include the $2,243.43 of Westlaw charges and $485.73 in express delivery and postage charges incurred by the Curtis, Goodwin firm. No award for the expert's fees incurred will be made, because the request is not supported by a sufficient explanation.

In summary, Messrs. Lofland and Gerding shall be jointly and severally liable to pay the total sum of $33,822.29 pursuant to § 1927. Payment shall be made to the State of Arizona which contracted for and is responsible for all defense costs in this case. Braunstein will be entitled to credit for up to $30,000 for any sums paid by his lawyers. Amounts collected from the lawyers shall be conclusively presumed to apply to the $30,000 in attorneys' fees, and only after that has been collected will any sums collected be applied to the award for excess costs.

## IV.  CONCLUSION

For the reasons above, the motion at docket 121 is **GRANTED** as follows: plaintiff Paul Braunstein shall pay to the defendant State of Arizona the sum of $53,490.50. The motion at docket 122 is **GRANTED** as follows: plaintiff Paul Braunstein shall pay to the defendant State of Arizona the sum of $101,531.50, which means Paul Braunstein shall pay the State of Arizona the total amount of $155,022; and

**IT IS FURTHER ORDERED** that Gary E. Lofland and Paul Sullivan Gerding, Jr. are jointly and severally liable to pay and shall pay the State of Arizona the sum of $33,822.29; and

**IT IS FURTHER ORDERED** that the State of Arizona shall not be permitted to collect more than $125,022 from plaintiff Paul Braunstein, except to the extent that it can establish that it was unable to collect $30,000 from Gary E. Lofland and Paul Sullivan Gerding, Jr.; and

**IT IS ORDERED** that the Clerk of Court shall amend the Judgment at docket 120 to provide that the State of Arizona shall recover from Paul Braunstein the sum of $155,022 in attorneys' fees plus any costs taxed by the Clerk of Court; and finally

**IT IS ORDERED** that in collecting its judgment against Paul Braunstein, the State of Arizona must respect this order's provision that it may not collect more than $125,022 from him, except to the extent that it can demonstrate to the satisfaction of the court that it has been impossible to collect all or some portion of the $30,000 in attorneys' fees it is entitled to collect from Braunstein's lawyers, Gary E. Lofland and Paul Sullivan Gerding, Jr. (It should be noted that the basis for collecting from the lawyers is this order. The amended judgment itself will not reflect the award against the lawyers because they are not parties to the lawsuit.)

DATED this 31st day of August 2010.

                                      /s/ JOHN W. SEDWICK
                                  UNITED STATES DISTRICT JUDGE